**In re ROAMER LINEN SUPPLY, INC., Debtor.**

**In re ROAMER STEAM LAUNDRY, INC., Debtor.**

**Bankruptcy Nos. 82–B–20658, 82–B–20659.**

United States Bankruptcy Court, S.D. New York.

June 20, 1983.

---

**5.** Charles Dickens, *Oliver Twist.*

Phillips, Nizer, Benjamin, Krim & Ballon, New York City, for debtors; Martin Brecker, and Louis A. Scarcella, New York City, of counsel.

Hahn & Hessen, New York City, for Bank Leumi Trust Co. of New York.

DECISION ON NOTICE OF MOTION FOR ORDER TO SUBORDINATE LIENS OF INTERNAL REVENUE SERVICE AND BANK LEUMI TRUST COMPANY OF NEW YORK TO THE ADMINISTRATIVE EXPENSES OF THE CHAPTER 11 CASE.

HOWARD SCHWARTZBERG, Bankruptcy Judge.

The debtors in possession in this Chapter 11 case seek to subordinate a secured claim

held by a bank and a statutory tax lien asserted by the Internal Revenue Service to the payment in full of administration expenses, comprised mainly of the unpaid and projected legal fees of the debtors' attorneys. In effect the debtors want to use the collateral of the bank and the IRS to fund the debtors' attorneys' fees.

Roamer Linen Supply Co., Inc. ("Roamer Linen") and Roamer Steam Laundry, Inc. ("Roamer Steam") filed with this court on October 29, 1982, petitions pursuant to Chapter 11 of the Bankruptcy Reform Act of 1978. They were each authorized pursuant to Code § 1108 to continue in possession of their respective properties and to operate their businesses as debtors in possession. Roamer Linen was engaged in the business of owning, cleaning, laundering and supplying linen items to restaurants, hotels and commercial establishments. Roamer Steam was engaged in the business of providing laundry services for Roamer Linen.

On May 2, 1983, this court approved the debtors' application for substantive consolidation of the debtors' estates and approved an asset-purchase agreement among Roamer Linen and a consortium of purchasers for the sale of substantially all of Roamer Linen's business operations. The court also approved asset-purchase agreements between Roamer Steam and a third party for the sale of certain real and personal property of Roamer Steam.

The Internal Revenue Service ("IRS") filed various tax liens against the estates of the debtors. The debtors owe the IRS approximately $650,000, of which approximately $464,000 is secured by the IRS tax liens.

Bank Leumi Trust Company of New York ("Bank Leumi"), a third mortgagee, is secured by all of Roamer Linen's present and future personal property. Bank Leumi also has a mortgage on the real property of Roamer Linen located in Mt. Vernon, New York, which was authorized by this court on March 28, 1983, as adequate protection for Roamer Linen's use of other collateral subject to Bank Leumi's security interest. Roamer Linen is currently indebted to Bank Leumi for approximately $225,000. There are two mortgagees with superior liens to those of Bank Leumi.

At the hearing on May 2, 1983 involving the sale of certain assets of the debtors, Bank Leumi consented to the terms and conditions of the sale, provided that Bank Leumi received the balance of the proceeds to be deposited into a designated escrow account after the payment of real estate taxes, senior lienholders and leaseholders. At that hearing, the debtors reserved their rights to move to subordinate the liens of Bank Leumi only with respect to the assets not sold pursuant to the proposed sale. Bank Leumi reserved its rights to oppose a subordination application.

## SUBORDINATION OF TAX LIENS UNDER CODE § 724(b)

The debtors recognize that Code § 724(b), which permits the subordination of tax liens to certain administration expenses, applies only to Chapter 7 cases and is expressly made inapplicable to reorganization cases under Chapter 11 by Code § 103(b). *In re Community Hospital of Rockland County,* 5 B.R. 7, 5 B.C.D. 1115 (Bkrtcy.S.D.N.Y.1979), *aff'd.* 5 B.R. 11, 5 B.C.D. 1172 (D.C.S.D.N.Y.1980). However, the debtors contend that they are not utilizing any of the provisions of Chapter 11 of the Code to effect a distribution to creditors or to modify the existing rights of any secured party because they intend to liquidate all of their assets for the benefit of their creditors who will receive payment pursuant to the priority provisions of Chapter 7 of the Code. Hence, the debtors assert that this Chapter 11 case has all the indicia of a liquidation under Chapter 7 so as to justify the application of Code § 724(b). Having chosen Chapter 11 as their basis for relief, the debtors cannot now be heard to say that they would like to select helpful provisions from Chapter 7 which are expressly made inapplicable to reorganization cases under Chapter 11. The debtors' reliance upon Code § 724(b) as a basis for funding their attorneys' legal fees is misplaced.

## DOES CODE § 364(d) SUPPORT THE PRIMING OF SECURED CLAIMS TO PAY PAST AND FUTURE ATTORNEYS' FEES?

The debtors next maintain that the legal services rendered and to be rendered for the debtors constitute the obtaining of new credit or the incurring of new debt, the payment of which should be secured by a senior lien, pursuant to Code § 364(d), superior to both the IRS and Bank Leumi. The debtors reason that in order to provide for the continuation of legal services which, arguably, will benefit the secured creditors by insuring payment to them in full, the debtors should be allowed to subordinate the lien of the IRS and Bank Leumi to the administration indebtedness that is being incurred in this case, including an allowance for legal fees of the debtors' attorneys.

■■■ This argument assumes that attorneys who are retained by a debtor to perform postpetition legal services in connection with a bankruptcy case are "creditors" of the estate who may look to Code § 364(d) for super-creditor status. A "creditor" is defined in Code § 101(9)(A) as an "entity that has a claim against the debtor that *arose at the time of or before* the order for relief concerning the debtor." An attorney who is authorized by the court to represent a debtor in a case under the Bankruptcy Code is not a creditor of the estate; such attorney's compensation is governed by the standards expressed in Code § 330(a). See *In re Taylor Transport, Inc.*, 28 B.R. 832, 10 B.C.D. 426 (Bkrtcy.N.D. Ohio 1983). Although an attorney who performs services for a debtor is entitled to compensation from *the estate,* the legal services do not constitute new credit within the meaning of Code § 364(d)(1)(A) that the debtor or trustee "is unable to obtain ... otherwise ...." When the attorneys for the debtors applied to this court for an order approving their retention they represented that during the course of such retention they would perform such legal services as were necessary to protect the debtors' interests in this case, for which they would apply for compensation in accordance with Code § 330. They should not now be heard to say that any future legal work which they are required to perform in this case pursuant to their retention, as well as any past services rendered, should be elevated by Code § 364(d) to a super priority status.

Furthermore, Code § 364(d) requires that the "trustee or debtor in possession must establish an inability to obtain credit by any method other than security by a senior or equal lien on previously encumbered property." *1 Norton Bankruptcy Law and Practice,* Part 25-Page 8. The debtors have not satisfied this condition. Moreover, many of the legal services for which super priority status is claimed have already been performed. Thus, while Code § 364(d) is focused on obtaining otherwise unavailable *new* credit, the debtors are requesting super priority status for purported "credit" that has *already been advanced.* Furthermore, the "credit" was given prior to the court's approval as to whether the prescribed standards under § 364(d) have been met.

The debtors' beguiling argument for the issuance of an order pursuant to Code § 364(d) authorizing the funding of their attorneys' fees at the expense of the secured claims of Bank Leumi's third mortgage and the IRS tax lien represents a misuse of Code § 364(d). It would encourage attorneys for potential Chapter 7 debtors to seek a liquidation under Chapter 11 where their legal fees for effecting a liquidating reorganization could be funded at the risk of secured claim holders who might not be as adequately protected as the optimistic projections of the debtor would have the court believe. Hence, the debtor's position with respect to Code § 364(d) lacks merit.

## CODE § 506(c) and ADMINISTRATION EXPENSES

■■ The debtors do not limit their subordination argument to any specific costs and expenses of preserving or selling collateral embraced under the liens of Bank Leumi and IRS. The debtors expansively seek to subordinate such liens "to the payment in full of the administration expenses of the Chapter 11 case, including reasonable attor-

ney's fees." Thus, their position facially exceeds the limits of Code § 506(c), upon which they also rely, because this section is limited in scope and provides:

"c) The trustee may recover from property securing an allowed secured claim the reasonable, necessary costs and expenses of *preserving, or disposing of,* such property *to the extent of any benefit* to the holder of such claim. [Emphasis added].

The recovery under Code § 506(c) is expressly limited to the extent of any benefit to the holder of the secured claim. In this case the debtors contend that the efforts of the debtors, their counsel, the creditors' committee and its counsel culminated in a negotiated sale. The debtors assert that if a liquidation occurred, all of the intangible assets such as accounts receivable and delivery routes would be substantially sacrificed and that tangible assets, such as inventory, would be lost. Thus, the debtors reason that Bank Leumi and IRS will benefit from the debtors' disposition of their secured collateral.

This is not a case where the secured claimholders took positive steps to enhance or protect their secured position under the aegis of the administrative powers of the bankruptcy court, as in *In re Hotel Associates, Inc.,* 6 B.R. 108 (Bkrtcy.E.D.Pa.1980), where a secured claimholder obtained the appointment of a trustee under Code § 1104. Nor is this a case where a secured claimholder is asked to defray specific overhead expenses attributable to the sale of secured assets at a higher price, as in *In re Jim Kelly Ford of Dundee, Ltd.,* 14 B.R. 812 (D.C.N.D.Ill.1980), or the actual costs of foreclosure and litigation to quiet title on real property, as in *In re Truitt,* 15 B.R. 169 (Bkrtcy.N.D.Ga.1981). In this case the debtors seek to subordinate the secured claims of Bank Leumi and the IRS to *all* of the administration expenses in this case and all of their attorneys' fees because the negotiated sale enhanced and benefitted the estate and, in turn, the collateral of the secured claimholders. This argument was rejected in *In re Codesco,* 18 B.R. 225, 8 B.C.D. 1089, 6 C.B.C.2d 395 (Bkrtcy.S.D.N.Y.1982) when asserted on their own behalf

by the attorneys for a debtor. It is similarly inappropriate when asserted by the debtors themselves, notwithstanding their contention that here unlike in *Codesco,* the secured claimholders are not undercollateralized. If, as the debtors, contend, the collateral in question is sufficient to repay Bank Leumi and the IRS in full and all administration expenses, there is no reason why the debtors and their attorneys should saddle Bank Leumi and the IRS with the risk of satisfying administration expenses and the debtors' attorneys' fees in the event that the debtors are proved wrong. See *Matter of Robertson,* 14 B.R. 706 (Bkrtcy.N.D.Ga.1981).

That the bank and the IRS may have derived some benefit from the negotiated sale does not mean that their collateral should be subordinated to all of the administration expenses of this case, including all of the attorneys' fees claimed by the debtors' counsel. Any such benefit to Bank Leumi and the IRS was incidental to the primary objective, namely to maximize the estate in order to minimize the personal liability of the debtors' principal and to satisfy unsecured creditors. Neither Bank Leumi nor the IRS participated in the negotiated sale nor did they propose any suggestions with respect to the terms of sale. The deferred payments to the debtors' principal and to the unsecured creditors over an extended period under the purchase agreement are not consistent with prompt and immediate payment to Bank Leumi and the IRS. That Bank Leumi subsequently consented to the sale on condition that it be assured of payment from the receipt of all proceeds of the sale after the payment of other senior lienholders and real estate taxes should not now be turned against Bank Leumi for the benefit of the debtors' attorneys' fees and the administration expenses in this case, especially since the debtors expressly limited their retained right to subordinate Bank Leumi's liens only with respect to assets *not* sold.

The debtors, their principal and the unsecured creditors are the primary beneficiaries of the negotiated sale. It defies creduli-

ty to have this court believe that the debtors and their attorneys labored to negotiate a liquidation on a going concern basis, while using Bank Leumi's cash collateral, so as to enhance primarily the collateral of Bank Leumi and the IRS. Any indirect benefit that Bank Leumi and the IRS might ultimately receive as a result of the extended payout arrangement is too undefined to support the application of Code § 506(c) for the purpose of subordinating their liens to all the administration expenses in this case, including the debtors' attorneys' fees. See *In re Sonoma V,* 24 B.R. 600, 10 B.C.D. 63 (BAP–9 1982).

## CODE § 510(c)(1)—EQUITABLE SUBORDINATION

■ Lastly, the debtors focus upon the principles of equitable subordination that are codified in Code § 510(c)(1), which provides:

"§ 510. Subordination.

(c) Notwithstanding subsections (a) and (b) of this section, after notice and a hearing, the court may—

(1) under principles of equitable subordination, subordinate for purposes of distribution all or part of an allowed claim to all or part of another allowed claim or all or part of an allowed interest to all or part of another allowed interest; ..."

The debtors charge Bank Leumi and the IRS with inactivity and tacit approval of the negotiated sale of assets and that the latters' failure to seek a foreclosure or object to the sale of the assets in question permitted the estate to assume the burden of added administrative costs. Therefore, the debtors reason that the secured claimants should not receive any payments before rewarding the attorneys for the debtors who were instrumental in negotiating that which will ultimately provide the source for the enhanced payment to Bank Leumi and the IRS.

This position misses the mark because the debtors' use of cash collateral, subject to providing Bank Leumi with adequate protection in the form of an additional mortgage on the Mt. Vernon real estate, and the negotiated sale of assets did not confer any unfair advantage upon Bank Leumi and the IRS. Indeed, the value of the secured accounts receivable appears to have declined during the debtors' continued use of the cash collateral. There is no question that the claims of creditors may be subordinated to others where principles of equity call for such subordination. *Pepper v. Litton,* 308 U.S. 295, 60 S.Ct. 238, 84 L.Ed. 281 (1939); *In re Mobile Steel Company,* 563 F.2d 692 (5th Cir.1977). This court has previously examined the conditions which must be satisfied before the exercise of the power of equitable subordination should be applied and said in *In re Castillo,* 7 B.R. 135, at 138 (Bkrtcy.S.D.N.Y.1980), quoting from *In re Mobile Steel Company,* supra at pp. 699–700:

"[T]hree conditions must be satisfied before exercise of the power of equitable subordination is appropriate. (i) The claimant must have engaged in some type of inequitable conduct. (ii) The misconduct must have resulted in injury to the creditors of the bankrupt or conferred an unfair advantage on the claimant. (iii) Equitable subordination of the claim must not be inconsistent with the provisions of the Bankruptcy Act." [citations omitted]

Having successfully sought the authority to continue to use Bank Leumi's cash collateral in order to be in a position to structure a negotiated sale of assets, the debtors can not now be heard to argue that Bank Leumi and the IRS should be subordinated to all of the administration expenses in this case, including the debtors' attorneys' fees because these secured claimholders did not sufficiently resist the debtors' sale strategy. Neither Bank Leumi nor the IRS ever engaged in any inequitable conduct in this case so as to trigger the equitable subordination doctrine set forth in Code § 510(c)(1).

In light of the foregoing, the debtors' motion to subordinate the liens held by Bank Leumi and the IRS to the general administration expenses of this Chapter 11

case, including the debtors' attorneys' fees is denied.

SUBMIT ORDER on notice.