**In re The WILTWYCK SCHOOL, formerly known as the Wiltwyck School For Boys, Inc., and also known as Wiltwyck, Debtor.**

**Bankruptcy No. 81 B 20476.**
**83 Adv. 6118.**

United States Bankruptcy Court,
S.D. New York.

Nov. 1, 1983.

Cadwalader, Wickersham & Taft, New York City, for The Bowery Sav. Bank.

Webster & Sheffield, New York City, for debtor in possession.

DECISION ON MOTION AND CROSS–MOTION FOR SUMMARY JUDGMENT INVOLVING PRESERVATION AND EXPENSES UNDER CODE § 506(c).

HOWARD SCHWARTZBERG, Bankruptcy Judge.

At the core of the flurry of motions for summary judgment in this adversary proceeding lies the question whether the oversecured defendant, The Bowery Savings Bank, is liable under Code § 506(c) for the costs incurred by the Chapter 11 debtor in possession for the preservation, maintenance and disposition of its Eleanor Roosevelt Campus. This property, consisting of approximately 110 acres with improvements, including academic, residential and recreational facilities, is located in Yorktown, New York.

The debtor, The Wiltwyck School, has filed a summons and complaint against The Bowery Savings Bank ("Bowery"), the holder of a mortgage on the property in question securing a debt originally in the amount of $500,000 and now reduced to approximately $410,000. The complaint alleges that on May 23, 1983, the debtor conducted an auction of the property pursuant to a Notice of Auction signed by this court on April 18, 1983. This auction resulted in a contract of sale with a purchaser who agreed to pay the debtor a total of $1,300,000 for the property, with $429,959.95 paid at the closing on June 23, 1983. The complaint further alleges that the Bowery is the only secured claimholder and because the sale realized more than the amount of Bowery's claim, Bowery has received a substantial benefit from the sale. The debtor also states that it has spent a considerable amount of money for the preservation and maintenance of the property in question and has incurred costs in connection with the disposition of the property which have resulted in a benefit to Bowery and for which Bowery should be responsible.

In its answer, Bowery denied the essential allegations in the complaint and asserted various affirmative defenses and two counterclaims. The First Counterclaim charges that the debtor brought its adversary proceeding to recover the preservation, maintenance and disposition costs in bad faith and that the debtor had no reasonable basis to believe that the allegations in its complaint entitled the debtor to the recovery sought. Therefore, Bowery seeks to recover its costs in defense of this adversary proceeding, including attorneys' fees, costs and interest.

Bowery's Second Counterclaim recites paragraph 12 of the mortgage which entitles Bowery to collect from the debtor Bowery's counsel fees and costs incurred as a result of the following:

If any action or proceeding be commenced by or against the Mortgagee, including an action to foreclose this mortgage, *affecting said premises or the lien of this mortgage,* the Mortgagee may appear, defend, prosecute, retain counsel, and take such action as the Mortgagee shall deem advisable, and the costs thereof (including reasonable counsel fees and all applicable statutory costs, allowances and disbursements) ... shall be paid by the Mortgagor to the Mortgagee on demand and shall be secured by this mortgage. [Emphasis added].

Bowery then alleges in its answer that by bringing the present adversary proceeding, the debtor seeks to reduce Bowery's recovery under the mortgage and that Bowery is therefore entitled to recover from the debtor Bowery's costs in defense of this proceeding, including attorneys' fees, costs, disbursements and interest.

Bowery moved for summary judgment on the theory that as a matter of law Bowery did not benefit from or consent to the expenditures and that, in any event, the debtor was obligated under the mortgage to bear the expenses of preserving and disposing of the property. Bowery also moved for summary judgment on its second counterclaim to recover from the debtor Bowery's costs in defense of this proceeding, including attorneys' fees, based upon the terms of the mortgage whereby the debtor agreed to reimburse Bowery for defending

"any action . . . affecting said premises or the lien of this mortgage . . . ."

The debtor then cross-moved for summary judgment denying Bowery's motion for summary judgment and denying Bowery's first and second counterclaims because the debtor acted in good faith and because Bowery is not entitled to attorneys' fees and costs. The debtor asserts that the attorneys' fees provision in the mortgage is inapplicable to this adversary proceeding because it does not affect the "premises or the lien."

## THE UNDISPUTED FACTS

On August 1, 1981, the debtor defaulted in making the payment of principal and interest required under its mortgage with Bowery, dated September 15, 1978. The outstanding principal and interest was then approximately $409,000. While Bowery was preparing to commence a foreclosure action it received word from the debtor that a Chapter 11 petition would be filed shortly and that the debtor hoped to sell the mortgaged property, known as Eleanor Roosevelt Campus, and use the proceeds to pay off Bowery's mortgage as well as its unsecured creditors. On August 5, 1981, the debtor filed with this court its petition for relief under Chapter 11 of the Bankruptcy Code, 11 U.S.C. §§ 1101–1174 (1982).

In its petition, the debtor stated that the property in question was valued at $1,300,-000 and that the debtor's liabilities amounted to $2,391,000, including $436,000 in secured debts, the largest of which was Bowery's mortgage.

On July 27, 1982, nearly one year after the debtor filed its Chapter 11 petition, and at a time when the mortgage property remained unsold and the mortgage unpaid, Bowery moved to convert or dismiss the Chapter 11 case. The debtor, Bowery and the unsecured creditors' committee then entered into a stipulation that was "so ordered" by the court on October 25, 1982, whereupon Bowery withdrew its motion for conversion or dismissal. By the terms of the stipulation, the debtor was given until March 1, 1983 to sell the property voluntarily, otherwise it was to be sold promptly at public auction with all liens to attach to the proceeds. Bowery's stipulation was a recognition of the restraint imposed under the automatic stay which prevented Bowery from taking positive action toward the realization of its collateral. The stipulation merely advanced Bowery's rights toward such realization and was not a voluntary consent to the debtor's full dominion over the property, especially in view of the fact that Bowery's hands were tied.

The debtor did not enter into a contract of sale by March 1, 1983 and failed to proceed with an auction sale of the property, which prompted Bowery to move for an order citing the debtor for contempt of the "so ordered" stipulation requiring a prompt sale. After some legal maneuvering, a public sale of the property in question was held on May 23, 1983. The winning bid at the auction was $1,300,000. The amount demanded by Bowery in satisfaction of its mortgage was $429,959.95.

By order to show cause dated June 22, 1983, the debtor sought the establishment of a $200,000 escrow account because the debtor intended to make a claim against Bowery, pursuant to Code § 506(c), for the debtor's costs incurred in maintaining, preserving and disposing of the mortgaged property. The debtor's application for an escrow account was denied by this court at a hearing held on June 23, 1983. On June 27, 1983, Bowery received the balance of principal and interest and estimated attorneys' fees due and owing under the mortgage as of that date and executed a satisfaction of mortgage in favor of the debtor. Bowery's estimated attorneys' fees incurred up to June 27, 1983 were placed in an escrow account, pending an order of the court approving payment to Bowery of all or a portion of such funds.

The debtor's costs of preserving, maintaining and disposing of the property in question include the costs of full-time security and custodial services, electricity, heating fuel, truck repairs, insurance and telephone expenses. Included in the costs of

sale are the costs of appraisal, advertisement and attorneys' fees.

## SUMMARY JUDGMENT

■ Summary judgment is an extraordinary remedy which should be granted with great caution and only where it clearly appears that there is no genuine issue as to material fact to be tried. *See, e.g., Heyman v. Commerce and Industry Insurance Co.,* 524 F.2d 1317 (2d Cir.1975). As the fifth circuit has dramatically characterized it, summary judgment under Fed.R.Civ.P. 56(c) "is a lethal weapon, and courts must be mindful of its aims and targets and beware of overkill in its use." *Brunswick Corp. v. Vineberg,* 370 F.2d 605, 612 (5th Cir.1967). The submission by both parties to a lawsuit that no genuine issue as to material fact exists, as is the case when both move for summary judgment, does not necessarily oblige the court to grant judgment as a matter of law for one party or the other. *Schwabenbauer v. Board of Education,* 667 F.2d 305, 313 (2d Cir.1981); *Home Insurance Co. v. Aetna Casualty & Surety Co.,* 528 F.2d 1388, 1390 (2d Cir. 1976). Nevertheless, the cases in this circuit recognize the utility of summary judgment to obviate the need for a trial where no genuine issue of material fact is raised. *See Quinn v. Syracuse Model Neighborhood Corp.,* 613 F.2d 438, 445 (2d Cir.1980). Because no such material issues are presented herein, this case is ripe for disposition by summary judgment.

## A SECURED CREDITORS' LIABILITY FOR COSTS

The governing statutory authority is Code § 506(c) which provides as follows:

§ 506. Determination of secured status

(c) The trustee may recover from property securing an allowed secured claim the reasonable, necessary costs and expenses of preserving, or disposing of, such property to the extent of any benefit to the holder of such claim.

11 U.S.C. § 506(c) (1982). The legislative history reflects that any recovery permitted under Code § 506(c) is limited to the extent of any benefit to the holder of the secured claim. *See* H.R.Rep. No. 595, 95th Cong., 1st Sess. 357 (1977), *reprinted in* 1978 U.S. Code Cong. & Ad.News 5787, 6313; S.Rep. No. 989, 95th Cong., 2d Sess. 68 (1978), *reprinted in* 1978 U.S.Code Cong. & Ad. News 5854. Bowery maintains that as a matter of law and fact it received no benefit from the debtor's expenditure of funds for maintaining, preserving and disposing of the mortgaged property, and furthermore, the mortgage instrument placed the sole responsibility for such costs upon the debtor's shoulders.

The debtor relies heavily upon an early Second Circuit Court of Appeals case, *In re Myers,* 24 F.2d 349 (2d Cir.1928), in seeking recovery of preservation expenses from an oversecured creditor. Moreover, the debtor correctly notes that the ruling in the *Myers* case was expressly reaffirmed by the Second Circuit in *In re Rapid Motor Lines, Inc.,* 325 F.2d 436 (2d Cir.1964) (*per curiam*), *aff'g* 223 F.Supp. 469 (D.Conn.1963). However, both pre-Code cases involved a bankruptcy trustee's sale of secured assets free and clear of liens with the *actual consent* of the secured creditors. In the *Rapid Motor Lines* case, then District Judge (and now Court of Appeals Judge) Timbers observed the referee's finding that the secured creditor consented in writing to the trustee's sale free and clear of liens. 223 F.Supp. at 470. Both cases were decided before the adoption of the Bankruptcy Code and involved liquidating bankruptcies that are now included under Chapter 7 of the Code. Thus, no automatic stay was imposed as now applies under the Code and the secured creditors were not barred from seeking to foreclose upon their collateral. The creditors in the cited cases were satisfied to have the trustees in bankruptcy conduct the liquidations. Unlike the situations in the *Myers* and the *Rapid Motor Lines* cases, the secured creditor in this Chapter 11 case was automatically stayed by Code § 362(a) from foreclosing upon its mortgage. Therefore, Bowery originally sought a dismissal of the case so that it

could foreclose and satisfy its claim in full.[1] Bowery did not consent to a long drawn out delay in the realization of its secured claim, during which time preservation and maintenance costs were incurred. It was only after Bowery obtained an order to cite the debtor for contempt for failing to conduct an auction sale of the property that the debtor finally proceeded with the required public auction. Bowery's conduct was consistent with its position that it was entitled to satisfy its mortgage claim expeditiously without additional costs and expenses. The debtor's resistence to this position and the ensuing costs and expenses that were entailed as a result of the delay negate any implied consent on Bowery's part to the procedure followed by the debtor in satisfying Bowery's claim.

The pre-Code cases also recognized that in reorganization cases a failure to intervene and actively oppose reorganization does not warrant a finding of consent but rather, a "willingness to let those who desire and are willing to pay for the proceedings do so." *United States v. Henderson*, 274 F.2d 419, 421 (5th Cir.1959) (footnote omitted). The court went on to note that an undersecured creditor (as distinguished from the oversecured creditor in the instant case) who actually benefitted by reason of the debtor's expenditure of preservation costs and expenses "may in the *discretion* of the district court be properly charged against the mortgaged property." *Id.* at 423 (emphasis added).

The more recent case of *In re Elmwood Farm, Inc.,* 19 B.R. 338 (Bkrtcy.S.D.N.Y. 1982) that was decided by this court under the Bankruptcy Code is similarly inapposite. In that case, the senior mortgagees successfully sustained their secured status in an attack against the trustee in bankruptcy in the Chapter 7 case. They subsequently consented to allow the trustee to sell the property free and clear of liens, with the liens to attach to the proceeds. The dispute between the parties hinged on whether the oversecured creditors were entitled to interest and fees in accordance with the terms of

the mortgages and as authorized under Code § 506(b). The senior oversecured creditors did not contest the trustee's right to recover from their share the reasonable and necessary costs and expenses of preserving and disposing of the property in question to the extent the secured claimholders admittedly received a benefit.

Under the Bankruptcy Code, the key word in charging a lienholder with preservation and disposition expenses is "benefit". In *In re Codesco, Inc.,* 18 B.R. 225 (Bkrtcy. S.D.N.Y.1982) this court stated the rule as follows:

> Where the proceeds from a trustee's sale of encumbered property are sufficient to cover the actual costs associated with the sale and to pay the secured claim in full, it has been held that Code § 506(c) does not authorize charging the encumbered assets with foreclosure costs because the lienholder received no benefit and would have realized full satisfaction of its claim without the intervention of the trustee. *In re Robertson,* 14 B.R. 706 (Bkrtcy.N.D. Ga.1981).

*Id.* at 228–29.

Benefit is not the only element to be considered. Consent is also a factor, as noted by the Seventh Circuit Court of Appeals in *In re Trim-x, Inc.,* 695 F.2d 296 (7th Cir. 1982), when the court stated:

> Although the secured creditor eventually "benefited" from these expenses in the sense that it received the assets unharmed, it did not in any way consent to or cause these expenses. Further, placing the responsibility for these expenses on a secured creditor would discourage a trustee from taking reasonable steps to assess an estate's position. As explained in *In re Codesco, Inc.,* 18 B.R. 225, 230 (Bkrtcy.S.D.N.Y.1982), section "506(c) was not intended as a substitute for the recovery of administrative expenses that are appropriately the responsibility of the debtor's estate."

*Id.* at 301.

 In the instant case, the debtor desired to forestall a foreclosure sale by Bow-

---

1. A conversion to Chapter 7 was not feasible because Code § 1112(c) provides that an elee-

mosynary corporation may not be converted involuntarily. *See* 11 U.S.C. § 1112(c) (1982).

ery, whose claim unquestionably could have been satisfied in full. The negotiated sale, which was the object of the debtor's dilatory tactics, was primarily for the benefit of the debtor and its unsecured creditors. Any benefit received by Bowery as a result of the delay in disposing of the property was too remote or indefinite to charge Bowery without its consent with preservation and disposition expenses under Code § 506(c). *See Dozoryst v. First Financial Savings and Loan Assoc.,* 21 B.R. 392, 394 (N.D.Ill.1982); *In re Roamer Linen Supply, Inc.,* 30 B.R. 932, 936–37 (Bkrtcy.S.D.N.Y. 1983); *In re New England Carpet Co.,* 28 B.R. 766, 772–73 (Bkrtcy.Vt.1983); *In re Codesco,* 18 B.R. at 228–30.

## THE MORTGAGE TERMS

■ There is a more fundamental reason why Bowery is entitled to summary judgment. Under the debtor's mortgage with Bowery, the debtor agreed to bear the expenses of preserving and disposing of the property in the event of a default. Any preservation expenses incurred by Bowery on behalf of the debtor were secured by the mortgage. Accordingly, the debtor may not shift to Bowery the expenses which it previously agreed to bear, especially when those expenses were incurred to maximize a return for the debtor and the unsecured creditors. Bowery is entitled to rely upon its rights under the mortgage. The preservation and disposition expenses which the debtor assumed under the mortgage may not now be characterized as a "benefit" to Bowery within the meaning of Code § 506(c) merely because the debtor sought relief under Chapter 11 of the Bankruptcy Code to gain time to negotiate a voluntary sale of the mortgaged property. The preservation and disposition expenses which culminated in the public auction sale were solely the obligation of the debtor.

## BOWERY'S FIRST COUNTERCLAIM

Bowery alleges in its First Counterclaim that the debtor brought the action for preservation and disposition expenses under Code § 506(c) in bad faith and without le-

gal or factual merit. Therefore, Bowery asks that it be awarded its costs in defending the action, including attorneys' fees and all applicable statutory costs, allowances and disbursements, together with interest. The debtor moved for summary judgment seeking dismissal of Bowery's counterclaim alleging bad faith. The debtor states that its 506(c) "action is based on decisions of the Second Circuit and of this very Court, as well as other authorities."

■ As the party opposing the debtor's motion for summary judgment on the First Counterclaim, Bowery "may not rest upon the mere allegations or denials of [its] pleading, but ... must set forth specific facts showing that there is a genuine issue for trial." *Dressler v. MV Sandpiper,* 331 F.2d 130, 132–33 (2d Cir.1964); *see West Virginia v. Hassett (In re OPM),* 21 B.R. 993, 1010 (Bkrtcy.S.D.N.Y.1982) ("[A] general innuendo alleging bad faith which points to no particular facts on which to ground the charge is no defense to a motion for summary judgment."). Bowery makes only a bald allegation of bad faith which is entirely devoid of the type of specific supportive facts required to defeat a summary judgment motion. Additionally, Bowery failed to submit a statement under local rule 3(g) of this judicial district which provides in pertinent part:

> The papers opposing a motion for summary judgment shall include a separate, short and concise statement of the material facts as to which it is contended that there exists a genuine issue to be tried.

> All material facts set forth in the statement required to be served by the moving party *will be deemed to be admitted* unless contraverted by the statement required to be served by the opposing party.

Local Rule 3(g), Rules for the Southern District of New York (1983).

Bowery did not submit a "Rule 3(g) statement" opposing summary judgment on the First Counterclaim. Accordingly, the debtor's statement that it brought this proceeding in good faith, based on case law of the second circuit, shall be deemed admitted.

Bowery's Reply Memorandum of Law questions the propriety of the debtor's conduct over the course of this Chapter 11 proceeding. This memorandum neither satisfies Rule 3(g) nor raises a genuine issue of material fact containing particularization of how the debtor acted in bad faith in bringing this § 506(c) action. The defendant's motion for summary judgment dismissing Bowery's First Counterclaim is therefore granted.

## BOWERY'S SECOND COUNTERCLAIM

In its Second Counterclaim, Bowery seeks to recover from the debtor Bowery's costs in defense of the debtor's Code § 506(c) action, including attorneys' fees and all applicable statutory costs, allowances and disbursements, together with interest. This claim is predicated on paragraph 12 of the mortgage in question.[2] Bowery argues that by bringing the instant action under Code § 506(c) for preservation and disposition expenses, the debtor seeks to reduce Bowery's recovery under the mortgage and therefore, paragraph 12 of the mortgage is implicated. The significant phrase in paragraph 12 of the mortgage to which Bowery's Second Counterclaim is directed involves any action or proceeding "affecting said premises or the lien of this mortgage . . . ." Bowery reasons that this contractual language is particularly suited for determination on a summary judgment motion.

Manifestly, the debtor's adversary proceeding bottomed on Code § 506(c) does not affect the "premises." However, Bowery maintains that the debtor's action affects the "lien of the mortgage" because the debtor's Code § 506(c) claim is intended to reduce Bowery's lien by nearly one-half as a result of asserted preservation and disposition expenses, including attorneys' fees. The debtor's motion for summary judgment dismissing Bowery's Second Counterclaim does not question Bowery's right to recover costs, expenses and attorneys' fees associated with Bowery's opposition to the Chapter 11 case or activities up to the public auction of the mortgaged property. The debtor does dispute, however, Bowery's charge for costs, expenses and attorneys' fees related solely to defending the debtor's action for preservation and disposition expenses under Code § 506(c). The debtor's motion for summary judgment as to Bowery's Second Counterclaim is based on the argument that, as a matter of law, paragraph 12 of the mortgage does not apply to Bowery's costs, expenses and attorneys' fees related to defending the debtor's Code § 506(c) action. It is settled law that "[t]he construction of a contract is for the court when its terms are unambiguous and there are no extrinsic facts to affect its construction." *National Utility Service, Inc. v. Whirlpool Corporation*, 325 F.2d 779, 781 (2d Cir.1963).

The debtor's unsuccessful action to impose preservation and disposition expenses upon Bowery pursuant to Code § 506(c) palpably does not affect "the lien of this mortgage." Indeed, an action against a lienholder under Code § 506(c) assumes the existence of a valid lien. Such action is intended to recover the preservation and disposition expenses to the extent of any benefit to the lienholder. That the recovery of such expenses by the trustee or debtor in possession may be charged against the allowed secured claim does not in any way impair the validity of the lien or question its reach. The mortgagee is bound by the express terms in the mortgage and may not now reconstruct the language so as to extend its coverage to all litigation affecting any amount due under the mortgage. If the debtor is to be bound contractually to reimburse Bowery for any and all litigation affecting any funds payable to Bowery as mortgagee there must exist more specific language to cover this condition than now appears in the mortgage. Accordingly, Bowery's motion for summary judgment on its Second Counterclaim is denied and the debtor's cross-motion seeking its dismissal is granted.

SUBMIT ORDER on notice in accordance with the foregoing rulings.

2. *See supra* p. 271.