**In the Matter of Leland F. BELEW, Helen J. Belew, Debtors.**

**The FEDERAL LAND BANK OF LOUISVILLE, Plaintiff,**

**v.**

**Leland F. BELEW, Helen J. Belew, and the Small Business Administration, An agency and instrumentality of the United States of America, Defendants.**

Bankruptcy No. 83–1006.
Adv. No. 83–1099.

United States Bankruptcy Court,
N.D. Alabama, N.D.

June 11, 1984.

James T. Baxter, III, Berry, Ables, Tatum, Little & Baxter, Huntsville, Ala., for plaintiff.

Philip A. Geddes, Decatur, Ala., for debtors/defendants.

George Batcheler, Asst. U.S. Atty., Birmingham, Ala., for Small Business Admin.

ORDER

EDWIN D. BRELAND, Bankruptcy Judge.

This matter is before the Court on the motion of the trustee, Bob J. Rodgers, and the Small Business Administration (hereinafter referred to as "SBA") seeking to charge the Federal Land Bank of Louisville (hereinafter referred to as "FLB") with its share of the reasonable and necessary costs and expenses of a certain sale of real estate. Also before the Court is the motion of FLB for the abandonment of stocks held by the trustee. Hearing in these causes was held on the 13th day of March, 1984.

From the testimony heard, other evidence and arguments presented at the hearing, the Court finds as follows. The trustee was allowed to sell the subject property free and clear of liens according to the Court's Order entered on December 21, 1983. Said sale was to be subject to all

conditions included in the written consent of the lienholders, FLB, SBA and Farmers Home Administration. One such condition was that FLB, the first lienholder, receive no less than an amount equal to the payoff balance on its secured claim, less a pro-rated share of the advertising. expenses. The property was sold by auction on December 22, 1983 for the sum of $221,000.00. Said sale was confirmed by the Court on January 6, 1984.

The advertising costs for the sale of the real estate, to which FLB consented to paying a percentage, were $1,942.56. The distribution of proceeds from the sale of the realty resulted in FLB paying 93% of the advertising costs, which amounted to $1,806.58. FLB contends, by countermotion, that such a high percentage of advertising costs was an incorrect application of the agreement to share in such costs. On the other hand, the trustee and SBA argue that FLB should share in the other costs of sale, in addition to the advertising costs, to the extent of the benefits received by FLB upon disposition of the real estate.

The question thus presented to the Court is whether FLB should bear "the reasonable necessary costs and expenses of preserving, or disposing of, such property to the extent of any benefit to ..." FLB as the senior lienholder pursuant to 11 U.S.C. Section 506(c). The movants' position is based on the equitable principle that a secured party can be charged with certain costs and expenses of the trustee that are required to preserve or dispose of property in which the secured party has an interest, at least to the extent that secured party receives a benefit from such preservation or disposition. There is substantial case law to support such an application of Section 506(c) in certain situations. See *In re Trim-X, Inc.*, 695 F.2d 296, 299, 300, 301 (7th Cir.1982); *In re Manchester Hides, Inc.*, 32 B.R. 629, 633 (Bkrtcy.N.D.Iowa 1983); *In re Codesco*, 18 B.R. 225, 230 (Bkrtcy.S.D.N.Y.1982); *In re Hotel Associates, Inc.*, 6 B.R. 108, 110–114 (Bkrtcy.E.D. Pa.1980). However, these decisions are based on specific factual findings such as the lienholder's consent to a sale free and clear of liens, whether the lienholder had instigated lift stay proceedings, the oversecured or undersecured status of the lienholder and the extent of "benefit" received by such lienholder by virtue of the preservation or disposition of the property. Although Section 506(c) would, at first glance, appear to provide a clear guideline to courts faced with this issue, the uneven and unsettled nature of the line of cases both prior and subsequent to the enactment of the Code indicates a continuing uncertainty surrounding this issue. All that can be clearly ascertained from the often inconsistent case law under Section 506(c) is that any determination of which costs, if any, are due to be charged to the lienholder in these situations will vary according to the facts of a particular case. See generally 3 Collier on Bankruptcy, Section 506.6 (15th ed. 1983).

In the instant case, the movants argue that FLB "benefited" from the trustee's sale sufficiently to come under Section 506(c), since FLB recovered its claim in full from the proceeds of the auction sale of the real estate. FLB contends that its secured claim would have been paid in full if it had been allowed to foreclose, and that therefore the trustee's involvement did not "benefit" FLB at all. To demonstrate benefit in this regard, the trustee must show that if not for the costs expended in the sale of the property, the secured creditor would not have received as much of its claim as was realized from the trustee's involvement in the sale of the property. *Brookfield Production Credit Association v. Borron*, 36 B.R. 445, 448 (E.D.Mo.1983). See also *In re Wiltwyck School*, 34 B.R. 270, 274 (Bkrtcy.S.D.N.Y.1983); *In re Robertson*, 14 B.R. 706, 709 (Bkrtcy.N.D.Ga. 1981). Although this Court has no way of making a definite determination of the likelihood of FLB's recovery of its claim in full if foreclosure had taken place, the movants offered no proof to the contrary, and therefore failed to demonstrate a true "benefit" received by FLB above what could have been recovered upon foreclosure.

Another factor considered by courts construing Section 506(c) is the role of the lienholder, usually regarding such lienholder's consent to the preservation or disposition of the property subject to its lien. The movants point to FLB's written consent to the auction sale as a basis for FLB's liability for Section 506(c) charges. In this regard the movants rely on the in-depth analysis and ruling of Judge Wright in *In re Central Foundry Company*, 45 B.R. 395 (Bkrtcy.N.D.Ala.1983). However, there are significant distinguishing facts in the *Central Foundry* case that limit its applicability to the case presently before this Court. In the *Central Foundry* case, the senior lienholder consented to a subordination of its position in certain instances, and expressly charges. Further distinguishing the *Central Foundry* facts from those in the case at bar is the nature of the collateral in *Central Foundry*—accounts receivable and inventory, which require a great deal more "preservation and trustee involvement than the real estate involved in the present dispute. Furthermore, the "consent" given by FLB in the instant case was somewhat qualified. Certainly, FLB did not seek the aid of the Bankruptcy Court, in fact, FLB had moved to have the automatic stay lifted prior to the Court's approval of the trustee's petition to sell free and clear of liens. Thus, in no way did FLB "cause" the disposition of the property by auction. See *Brookfield Production Credit Ass'n*, supra, at 449; *Wiltwyck School*, supra, at 274, 275; *Robertson*, supra, at 709. For the foregoing reasons, this Court is of the opinion that FLB should not be charged with any expenses incurred by virtue of the auction sale beyond the prorated share of the advertising costs consented to by FLB. Therefore the motion of the trustee and SBA is due to be denied.

■ The countermotion of FLB for reimbursement from SBA for the portion of the advertising expenses allegedly charged by FLB in violation of FLB's conditional written consent is based on the ratio used to apportion the advertising costs. FLB contends that the share of such expenses borne by FLB was grossly higher than what had been consented to. However, this Court is of the opinion that the formula used by the trustee to apportion the advertising expenses (93%—the percentage of the proceeds of the sale that were distributed to FLB) was neither unreasonable nor inequitable under the circumstances. Therefore, the distribution from the proceeds of the auction sale of the subject real estate is to remain as is.

The remaining matter before the Court concerns the status of certain FLB stock owned by the debtors which was pledged as additional security for the indebtedness owed to FLB. The Court concludes that said stock is due to be abandoned by the trustee to FLB.

It is therefore ORDERED, ADJUDGED AND DECREED that the motion of the trustee and the Small Business Administration seeking to charge the Federal Land Bank of Louisville with a pro rata share of certain expenses and costs of the sale of the subject real estate be and hereby is denied.

It is also ORDERED, ADJUDGED AND DECREED that the countermotion of the Federal Land Bank of Louisville be and hereby is denied, and that the present scheme of distribution shall remain intact.

It is further ORDERED, ADJUDGED AND DECREED that the motion of the Federal Land Bank of Louisville for the abandonment of stock by the trustee be and hereby is granted.