## In re WEST POST ROAD PROPERTIES CORPORATION, Debtor.

### Bankruptcy No. 83 B 20269.

United States Bankruptcy Court, S.D. New York.

Nov. 27, 1984.

Barbara Balaber-Strauss, New York City, Trustee.

Samuel J. Kisseloff, New York City, for Tremont Federal Sav. and Loan Assn.

## DECISION ON MOTION AND CROSS-MOTION TO CHARGE SECURED CREDITOR FOR PRESERVATION AND SALE EXPENSES

HOWARD SCHWARTZBERG, Bankruptcy Judge.

A trustee in bankruptcy, who persuaded an oversecured foreclosing mortgagee that the trustee's bankruptcy sale could be accomplished more expeditiously than through a pending state court foreclosure action, now seeks to impose upon the mortgagee the costs of the sale pursuant to 11 U.S.C. § 506(c). The mortgagee resists the payment of costs on the ground that it received no benefit from the trustee's sale because it would have been paid in full at the foreclosure sale, including reimbursement for all of its foreclosure expenses in accordance with the terms of the mortgage.

## FACTS

The debtor, West Post Road Properties Corporation, filed with this court a petition for relief under Chapter 11 of the Bankruptcy Code on May 17, 1983. Its sole asset was a parcel of developed commercial real estate in White Plains, New York.

In March of 1983, prior to the commencement of the debtor's Chapter 11 case, Tremont Federal Savings and Loan Association ("Tremont"), the holder of a first mortgage on the debtor's real estate, commenced an action to foreclose the mortgage in the Supreme Court of New York. On May 12, 1983, Tremont applied for the appointment of a receiver in the state court, which was accomplished pursuant to an order dated May 23, 1983. However, in the interim, and unknown to Tremont, the debtor filed with this court its Chapter 11 petition.

In July of 1983, Tremont applied to this court for an order pursuant to 11 U.S.C. § 362(d) vacating the automatic stay so that Tremont could continue with its state court foreclosure action. Tremont's application to vacate the automatic stay was heard on August 8, 1983 and was granted on default. Thereafter, on September 26, 1983, the debtor's Chapter 11 case was converted to a liquidation case under Chapter 7 of the Bankruptcy Code. Barbara Balaber-Strauss, Esq., who was appointed trustee, took steps to sell the real property, including retaining an auctioneer and advertising the property for sale.

As of the date of the filing of the debtor's Chapter 11 case, Tremont's first mortgage claim amounted to $201,430.30, inclusive of interest at 16 percent per annum. The trustee advised Tremont that she had received two firm offers for the purchase of the property in the amounts of $400,000 and $450,000 accompanied by good faith deposits, both sums being substantially in excess of Tremont's first mortgage claim and that her trustee's sale would be con-

ducted more expeditiously than a state court foreclosure action so that the best interests of all the parties could be served by permitting the trustee to conduct her bankruptcy sale rather than await a state court foreclosure action. Accordingly, the trustee in bankruptcy entered into a stipulation with Tremont, dated October 25, 1983, which permitted the trustee to sell the property expeditiously and upon completion of the sale, and after the payment of the expenses of the sale, Tremont would be paid all monies due Tremont as first mortgagee pursuant to the terms of the mortgage. The relevant portion of the stipulation reads as follows:

> The proceeds of the sale shall be paid over to BARBARA BALABER-STRAUSS, Trustee, in escrow, to be paid out: a) first in satisfaction of all expenses of the sale, including the commissions, reasonable legal fees and expenses of the Trustee, and b) second, to the lienors to the extent of the indebtedness of the Debtor to each of them in order of priority and seniority of their liens. The order of priority and seniority of liens shall be determined in accordance with the laws of the State of New York applicable thereto, including the statutes of the foreclosure action presently pending in Supreme Court, Westchester County, and any stipulations or agreements among the parties thereto.

Thereafter, the trustee ultimately sold the property in June of 1984 for $720,000, after a previous purchaser defaulted in paying the balance of a higher purchase price. In July of 1984, pursuant to the October 25, 1983 stipulation, the trustee paid $286,174.63 to Tremont, representing the principal balance of Tremont's first mortgage claim, interest at 16 percent to the date of payment and reimbursement for taxes and 1983 insurance premiums paid by the trustee. The trustee withheld the payment of $8272.97, representing late charges from April 1, 1982 to the date of the Chapter 11 case and Tremont's counsel fees. Both items were called for under the terms of the mortgage. The trustee agreed that the $8272.97 was due under the

mortgage, but advised Tremont that she wished to receive the approval from this court before remitting the amount due. Thereafter, the trustee applied to this court and obtained an order dated September 6, 1984 authorizing her to pay Tremont's claim.

Notwithstanding the September 6, 1984 order, the trustee did not remit the $8272.97 to Tremont. Instead, she contended that Tremont was obligated to contribute to the cost of certain insurance premiums advanced by her as trustee. Consequently, Tremont filed with this court on October 24, 1984 its motion for an order directing the trustee to remit payment of the $8272.97 due to Tremont under the mortgage and pursuant to order dated September 6, 1984.

The trustee then cross-moved on November 8, 1984, for an order authorizing her to retain the sum of $8272.97 as an offset against moneys owed to the estate by Tremont and that Tremont be directed to pay $55,877, less the $8272.97 retained, as Tremont's pro rata share of the expenses of preserving and liquidating the real property. These expenses included the auctioneer's expenses and commissions, the trustee's counsel fees, insurance premiums and repair of the roof. The $55,877 claimed by the trustee from Tremont amounts to 40 percent of the costs and expenses that the trustee attributed to the sale of the real property.

## DISCUSSION

■ Generally a bankruptcy trustee's administrative expenses are not charged against secured claim holders because the trustee acts for the benefit of the estate and its unsecured claimants, except when expenses of preservation are incurred primarily for the benefit of the secured interest or where the secured claim holder caused or consented to such expenses. *Gravell, Shea & Wright Ltd. v. Bank of New England (In re New England Carpet Co.)*, 744 F.2d 16 (2d Cir.1984); *General Electric Credit Corp. v. Levin & Wein-*

*traub, Esqs. (In re Flagstaff Food Service Corp.),* 739 F.2d 73 (2d Cir.1984); *In re Trim-x, Inc.,* 695 F.2d 296 (7th Cir.1982); *In re Wiltwyck School,* 34 B.R. 270, 11 B.C.D. 265 (Bkrtcy.S.D.N.Y.1983); *In re Roamer Linen Supply, Inc.,* 30 B.R. 932, 10 B.C.D. 1314 (Bkrtcy.S.D.N.Y.1983); *In re Codesco, Inc.,* 18 B.R. 225, 8 B.C.D. 1089 (Bkrtcy.S.D.N.Y.1982). This proposition is codified in 11 U.S.C. § 506(c), which provides:

> The trustee may recover from property securing an allowed secured claim the reasonable, necessary costs and expenses of preserving, or disposing of, such property to the extent of any benefit to the holder of such claim.

 The two factors that must be considered before charging a secured claim holder with preservation and disposition expenses are whether the secured claim holder primarily benefitted from the expenses incurred and whether such creditor caused or consented to such expenses. In this case Tremont was oversecured; its claim amounted to $201,430.30 as of the commencement of this case, whereas the trustee had already received two purchase offers of $400,000 and $450,000 and eventually sold the property at auction for $720,000. Tremont's mortgage gave it the right to charge the collection costs and expenses, including attorneys' fees against the debtor. Thus, had Tremont proceeded with its state court foreclosure sale it would have realized its claim in full, including the expenses of collection. The trustee was anxious to conduct a bankruptcy sale because she had an opportunity to maximize the estate as a result of a prompt sale, which would serve the interests of all parties. In these circumstances it cannot be said that the liquidation expenses were incurred primarily for the benefit of the secured claim holder. This point was expressed in *In re Codesco, Inc.,* as follows:

> Where the proceeds from a trustee's sale of encumbered property are sufficient to cover the actual costs associated with the sale and to pay the secured claim in full, it has been held that Code § 506(c) does

not authorize charging the encumbered assets with foreclosure costs because the lienholder received no benefit and would have realized full satisfaction of its claim without the intervention of the trustee. *In re Robertson,* 14 B.R. 706 (Bkrtcy.N.D.Ga.1981). The key factor is whether or not any "benefit" was received by the holder of the secured property, since any recovery permitted from such property must be measured not by the outlay, but by the necessity and the benefit involved, usually limited to the actual foreclosure costs saved by the lienholder where the full satisfaction would not otherwise have been realized because the secured claim exceeded the value of the encumbered property. See *In re Truitt,* 15 B.R. 169 (Bkrtcy.N.D.Ga.1981).

18 B.R. at 228–29, 8 B.C.D. at 1091.

Pursuant to the terms of the debtor's mortgage with Tremont, the debtor was responsible for collection expenses in the event of default, including attorneys' fees. As in the case of *In re Wiltwyck School,* 34 B.R. at 275, 11 B.C.D. at 268, the trustee may not shift to the mortgagee the expenses which the debtor previously agreed to bear because Tremont "is entitled to rely upon its rights under the mortgage."

 The stipulation between the parties dated October 25, 1983, whereby Tremont consented to the trustee's auction sale, cannot be characterized as a consent by Tremont to being charged with a pro rata share of the liquidation expenses. The proceeds from the sale were to be applied first in satisfaction of all of the expenses of the sale and second, to the lienors in the order of priority. Accordingly, all of the expenses of the sale should initially be satisfied and then Tremont should be paid in full. The balance of the proceeds should then be distributed in satisfaction of the second mortgage and then to the unsecured creditors. Obviously, Tremont had no objection to the trustee first applying the sale proceeds to the expenses attributable to such sale because Tremont was oversecured and knew that it would be paid in full in accordance with the terms of its mort-

gage. However, a consent to the trustee first applying the sale proceeds to liquidation expenses does not constitute a consent to being charged with a portion of such expenses, especially when the first mortgage is oversecured and expects to be paid in full in accordance with the mortgage terms. Code § 506(c) may not be used to saddle a mortgagee with liquidation expenses that must be borne by the estate. This point was expressed by the Seventh Circuit Court of Appeals in *In re Trim-x*, 695 F.2d at 296, as follows:

> Although the secured creditor eventually "benefited" from these expenses in the sense that it received the assets unharmed, it did not in any way consent to or cause these expenses. Further, placing the responsibility for these expenses on a secured creditor would discourage a trustee from taking reasonable steps to assess an estate's position. As explained in *In re Codesco, Inc.*, 18 B.R. 225, 230 (Bkrtcy.S.D.N.Y.1982), section "506(c) was not intended as a substitute for the recovery of administrative expenses that are appropriately the responsibility of the debtor's estate."

## CONCLUSIONS OF LAW

1. The liquidation expenses in question were not incurred by the trustee in bankruptcy primarily for the benefit of the first mortgagee, Tremont.

2. Tremont neither caused nor consented to being charged with the liquidation expenses in question.

3. The trustee may not invoke Code § 506(c) to charge Tremont with any portion of the liquidation expenses in question.

4. Tremont's motion for an order directing the trustee to remit payment of the funds due to Tremont pursuant to the terms of its mortgage and the order of this court, dated September 6, 1984, is granted.

5. The trustee's cross-motion for an order directing Tremont to pay a share of the costs and expenses of preserving and selling the debtor's real property is denied.