**In re FLAGSTAFF FOODSERVICE CORPORATION, et al., Debtors.**

**Bankruptcy No. 81 B 11430–11436 (PBA).**

United States Bankruptcy Court, S.D. New York.

April 12, 1983.

Paul, Weiss, Rifkind, Wharton & Garrison, New York City, for Nelson Peltz, Peter May and Robert Ronnenberg; Helen Davis Chaitman, New York City, of counsel.

Jarblum & Solomon, P.C., New York City, for Robert Peltz; William Jarblum, New York City, of counsel.

Raff, Scheider & Wiener, Newark, N.J., for General Elec. Credit Corp.; Jeremy Galton, Newark, N.J., of counsel.

Levin & Weintraub, New York City, for debtors; Elias Mann, New York City, of counsel.

ORDER AND DECISION ON MOTION BY CORPORATE OFFICERS TO COMPEL PAYMENT OF PAYROLL TAXES

PRUDENCE B. ABRAM, Bankruptcy Judge:

In late November 1982, a motion was made by three officers of the debtors seeking an order from this court compelling General Electric Credit Corporation ("GECC") to pay approximately $290,000 in payroll taxes incurred by Flagstaff Foodservice Corporation and its related debtors (collectively "Flagstaff") as debtors-in-possession during the course of these Chapter 11 cases, or alternatively seeking to amend the court's orders of July 21 and 29, 1981, which approved borrowing agreements between Flagstaff and GECC and granted GECC a lien on virtually all of the assets of Flagstaff, to allow Flagstaff to use its funds, which are subject to a security interest in favor of GECC, to pay these taxes. In addition, the movants seek attorneys' fees in connection with the motion. Flagstaff, as well as a fourth officer, have joined in the motion. GECC has vigorously opposed the motion.

Pursuant to Emergency Bankruptcy Rule I(d) adopted by the United States District Court for the Southern District of New York, bankruptcy judges have been authorized to perform all acts and duties necessary to handle cases and proceedings, with certain exceptions not here relevant. However, in related proceedings as defined in the rule, final judgment or issuance of a dispositive order can only be made by the District Court in the absence of consent by the parties. This court has determined that this is not a related proceeding as it involves the allowance of a claim against the estate; orders in respect to obtaining credit; and an order to turn over property of the estate. Therefore, this court can issue a final order on this motion.

In a contested matter, which this motion is, Rule 914 of the Rules of Bankruptcy Procedure, provides that "reasonable notice and opportunity for hearing shall be afforded the party against whom relief is sought." At the hearing on the motion held December 8, 1982, the court discussed whether an evidentiary hearing should be had. It became apparent to the court that affording all parties an additional opportunity to submit affidavits and legal memorandum would be sufficient and that an evidentiary hearing was not required.

As part of their moving papers, the three officers, who are Robert Ronnenberg, Peter May and Nelson Peltz, submitted two affidavits: the affidavit of Mr. Ronnenberg sworn to November 19, 1982 (the "First Ronnenberg Affidavit") and the affidavit of Peter May sworn to November 19, 1982 (the "First May Affidavit"). Mr. Ronnenberg is the vice president and controller of the debtors; Mr. May has been the vice chairman and chief financial officer of the debtors since July 22, 1981, the day after the Chapter 11 petitions were filed. The fourth officer who joined in the motion, Robert Peltz, also submitted an affidavit prior to the December 8 hearing, which was sworn to December 3, 1982. Mr. Peltz was the President and Chief Operating Officer of Flagstaff from the date of the filing of the Chapter 11 petitions until March 19, 1982. A memorandum of law was also submitted on behalf of Mr. Peltz.

Prior to the December 8th hearing, GECC filed a response to the motion which stated in part, "GECC will rely upon the annexed Affidavit." The affidavit referred to is an affidavit of Hugo De Andrea, District Manager and Operations Manager of GECC, sworn to December 1, 1982. GECC also submitted a memorandum of law.

Following the hearing on December 8th and in accordance with the timetable fixed

at the hearing, additional affidavits were filed. Robert Wolf, the Regional Manager of GECC, and Richard Allen, the Senior Accounting Executive of GECC, filed identical affidavits sworn to on December 16, 1982 (the "Wolf and Allen Affidavits"). Mr. Ronnenberg filed a further affidavit sworn to December 16, 1982 (the "Second Ronnenberg Affidavit"). On December 22, 1982, there was filed an undated affidavit of William G. McLendon, the Region Collateral Validation Manager of GECC (the "McLendon Affidavit"). Finally there was filed a further affidavit from Peter May sworn to December 28, 1982 (the "Second May Affidavit").

The affidavits make a number of factual assertions, some of which are disputed by one side or the other. This court has carefully reviewed all of the affidavits and finds no dispute over the facts this court believes to be determinative of the motion. The key factual points are the following: the payroll taxes at issue arose after the commencement of these Chapter 11 cases on July 21, 1981 and are valid expenses of administration. First Ronnenberg Affidavit at 5. The indebtedness of Flagstaff to GECC at the commencement of these cases was approximately $22 million and was secured by liens on all or virtually all of the debtor's real and personal property. Within days of the filing of the petitions, Flagstaff sought approval of a new financing arrangement with GECC, pursuant to which GECC agreed to make certain advances. The order approving the financing arrangement granted GECC a lien on all of·Flagstaff's assets and a superpriority status, subordinate to the rights of reclaiming creditors.[1] At the time the financing orders were signed it was apparently believed that GECC was overcollateralized as the collateral had a book value of $42 million. The GECC debt, including post-petition advances and the prepetition debt, has been reduced to less than $4.8 million. GECC has claimed, and assuming that the interest sought and expenses sought are proper that in all likelihood a deficiency will exist after

liquidation of its collateral. First Allen Affidavit at ¶ 21.

At the time Flagstaff filed its Chapter 11 cases in July 1981 it was an operating entity. Within months, Flagstaff discontinued its operations and began liquidating in the Chapter 11 and GECC continued its financing. Peltz Affidavit at 2–3. Flagstaff has never had any operating funds during the Chapter 11 cases except for the funds provided by GECC nor has it had any free assets. The First Ronnenberg Affidavit and the Second May Affidavit assert that GECC has been the primary, if not sole, beneficiary of the Chapter 11 cases to date. GECC denies that these Chapter 11's have been conducted for their benefit and have denied any benefit. See, e.g., Wolf and Allen Affidavits at 9. Until early November 1982 when GECC moved to convert the case to a Chapter 7, GECC had taken no action to foreclose its lien or to give notice of default under the loan agreement, even though Flagstaff had long ceased operating. Prior to the hearing, the November motion was withdrawn and counsel for GECC by letter dated November 22, 1982 advised the court that the motion was being withdrawn since "GECC could not in all good common sense, go forward" with the motion to convert "faced with the potential loss of one asset and the possible loss of an advantageous transaction" if conversion occurred. GECC has indeed been the primary financial beneficiary of the Chapter 11 liquidation effort since it holds a security interest on all assets in the estates and those assets have not yet yielded enough to pay off the indebtedness due it. GECC has made its election by its actions over the course of these cases to continue these cases in Chapter 11 and all that entails.

GECC's affidavits create the superficial appearance of a dispute over the degree of involvement of GECC in Flagstaff's daily operations. See, e.g., McLendon Affidavit and compare the Second Ronnenberg Affidavit at ¶ 4 and Second May Affidavit at

---

1. There exists a separate dispute with respect to the reclaiming creditors and nothing in this opinion resolves that dispute, which the court presently has under advisement.

¶ 15. What is fundamental to this motion and what comes through clearly from the GECC affidavits is that GECC advanced monies to Flagstaff only on the basis of budget projections and that it consistently monitored (and continues to monitor) Flagstaff's liquidation operation. McLendon Affidavit at ¶ 2; Wolf and Allen Affidavits at ¶ 14 and Exhibit F; Second May Affidavit at ¶¶ 9 and 13. Given the amount of money involved, GECC could be expected to closely monitor the situation and actively consider alternative plans for realization on its collateral.

█ GECC has not denied the allegation in the First Ronnenberg Affidavit that GECC would have funded the payroll taxes at the time they were incurred (principally the Fourth Quarter 1981 and the First Quarter 1982) if they had been included in the budget projections. The statement in the DeAndrea Affidavit that Flagstaff could utilize advanced funds in any manner they wished is only technically correct. GECC apparently did not guide the hand that wrote the checks but equally had the funds been used for other than expected purposes, GECC would have quickly ceased further advances or otherwise protected its interests. Flagstaff was not given a blank check. Likewise the statement in the Allen and Wolf Affidavits that "GECC did not know that Flagstaff would not have been able to make timely payments of its payroll taxes" is taken by this court as merely indicating that GECC did not know the taxes had not been included in the budget projections against which funds were advanced. GECC certainly knew Flagstaff had and has no free assets from which to pay the payroll taxes.

At its most basic the issue raised by the motion is this: can and should this court direct the immediate payment of payroll taxes due by the debtors-in-possession when the only available source of funds to pay the taxes is the proceeds of property subject to a security interest? If this court does not direct the payment of the payroll taxes at this time, the Internal Revenue Service will in all likelihood seek to collect the amount from these officers as the four officers are potentially liable [2] for the taxes under the Internal Revenue Code. This court has concluded after balancing the legal and equitable rights of all interested parties that the payroll taxes should be immediately paid from the assets of the estates by the debtors-in-possession if it has any funds on hand from which to make payment, and in the absence of such funds, by GECC making sufficient funds available.

█ At the outset it is necessary to dispose of the contention by GECC that the four officers are not parties in interest under Bankruptcy Code Section 1109 and thus may not be heard, and that they have no standing to appear to make this motion. Section 1109(b) does not define the term "party in interest." Nor is there a definition elsewhere in the Bankruptcy Code. "Section 1109(b) must be construed broadly to permit parties affected by a Chapter 11 case to appear and be heard." 5 Collier on Bankruptcy (15th Ed.) ¶ 1109.02 at 1109–22.1–23. It seems indisputable that the officers' interest in protecting against secondary liability for a debt for which the debtors-in-possession are primarily liable is sufficient to qualify them as parties in interest.

Reduced to fundamentals, the present motion is a motion under Bankruptcy Code § 503(a) seeking payment of an administrative expense. That section provides that:

"An entity may file a request for payment of an administrative expense."

There is no requirement that the entity [3] who files the request be the person to whom the obligation is due. The payroll taxes are

---

**2.** This court does not express any opinion about the outcome of any suit against these officers under the Internal Revenue Code. Nor does this court express any opinion as to the possibility that GECC may also be liable for the unpaid payroll taxes under the Internal Revenue Code.

**3.** "Entity", a defined term under Bankruptcy Code § 101(14), includes a person, which term under § 101(30) includes an individual.

clearly due and owing by the debtors-in-possession and are an administrative expense. As "entities", the four moving officers are entitled to bring this motion.

Turning to the merits of the motion, the court is confronted with the nub of the problem. Clearly since the payroll taxes are due and owing a direction to the debtors-in-possession to make payment ought to issue. However, equally clearly, the debtors-in-possession have no free assets from which to make any payment directed as all assets are subject to a lien in favor of GECC.

Section 506(c) of the Bankruptcy Code reads:

"The trustee may recover from property securing an allowed secured claim the reasonable, necessary costs and expenses of preserving, or disposing of, such property to the extent of any benefit to the holder of such claim."

A prime requirement of Bankruptcy Code § 506(c) is that the secured creditor must have derived some benefit from the trustee's preservation or disposal of the property. "The key factor is whether or not any 'benefit' was received by the holder of the secured property, since any recovery permitted from such property must be measured not by the outlay, but by the necessity and benefit involved." *In re Codesco,* 18 B.R. 225, 8 B.C.D. 1089, at 1091 (Bkrtcy.S.D. N.Y.1982). Benefit is a troublesome term to define. While often its interpretation rests upon subjective standards, "benefit to the secured creditor must be shown in the quantitative, not a qualitative or generalized, sense." *Dozoryst v. First National Savings and Loan of Downers Grove,* 21 B.R. 392, 394 (D.C.Ill.1982). The benefit to GECC has been quantitative in that it has received an actual return of millions of dollars by virtue of the Chapter 11 liquidation. Further, GECC has been content to see its collateral liquidated by the debtors-in-possession. Rationality requires an inference that GECC found that liquidation mode of Chapter 11 beneficial to it and the court is confirmed in that conclusion by the admission of counsel to GECC in its letter of November 22, 1982 to that effect.

■ However, should this substantial benefit be adjudged to be too speculative, the common law provides an alternative test. This test is one of consent. This alternate test was enunciated in *In re Louisville Storage Co.,* 21 F.Supp. 897, 899 (W.D.Ky.1936). "It has always been the rule inherent in general principles of equity that the lien holder must bear the expense of bankruptcy administration which is solely for his benefit, or to which he consents, or which he causes." While GECC contends that it never expressly consented to pay the payroll taxes of Flagstaff, express consent is not required. One may satisfy the *Louisville* test through impliedly consenting to pay administration expenses.

More recently this notion of implied consent was recognized in *In re Hotel Associates, Inc.,* 6 B.R. 108 (Bkrtcy.E.D.Pa.1980), which reviews and analyzes the prior case law in depth. *Hotel* involved a Chapter 11 trustee appointed on the motion of the secured creditor. The trustee sought assurance that he would be reimbursed for the expenses of an investigation with respect to the debtor directed by the terms of the order of appointment. The court held that the secured creditor impliedly consented to the "reasonable and necessary expenses of preserving the property" by requesting the appointment. The court pointed out that under the former Bankruptcy Act the emphasis was on consent, either express or implied. While Bankruptcy Code § 506(c) does not speak of consent, the court in *Hotel* found the consent test to be still viable. "[W]e are reluctant, however, to negate such factors [as consent and causation] totally, believing that the court, as a court of equity, must consider the many factors necessarily a part of the normal reorganization proceeding in order to do justice." *Id.* at 112. The court gave the trustee the assurance he sought, holding as follows:

"Here, too, moving party, clearly knew or should have known from the outset that the debtor's estate was insubstantial, apart from the secured assets. * * * "Where, as in the instant case, the sole asset of the debtor is heavily encumbered,

and where the holder of the senior secured claim moves the court to appoint a trustee, such creditor has impliedly consented to the trustee's costs and expenses, but has insured that those costs and expenses will be incurred. The Fund has clearly decided to 'run a risk of loss' in order to make possible a Chapter 11 plan of its own devising." 6 B.R. at 111, 114. See also Levy and Gottlieb, Allocation of Expenses of Preservation and Sale of Liened Property, Commercial Law Journal 356 (October 1981) and cases cited therein.

The superpriority afforded GECC under the financing orders cannot take away from this court the power to do justice nor can it confer on GECC the unfettered right to determine who gets paid and who does not. By permitting the liquidation of its collateral to go forward under the direction of the debtors in possession Chapter 11, GECC must be deemed to have consented to the payment from its collateral of all the reasonable and necessary expenses of the liquidation—not merely those it chooses to permit the debtors-in-possession to pay. GECC cannot place the financial burden of protecting its collateral on others. To hold otherwise would be to permit a gross inequity to occur.

To the extent that the debtors-in-possession have funds in their possession not earmarked for the so-called Reclamation Fund, they are directed to use such funds for payment of these payroll taxes. The debtors-in-possession are authorized to withhold from turnover to GECC sufficient funds to make the payroll tax payment. In the event that the debtors-in-possession are unable to accumulate sufficient funds to make the payment within 60 days, GECC is directed to make the payment or return sufficient monies to the debtors-in-possession to permit them to make the payment. Counsel fees will be denied.

SO ORDERED.