VAN GRAAFEILAND, Circuit Judge.
This appeal raises for the second time the question whether the super-priority security interest held by General Electric Credit Corporation (GECC) in all of the assets of the debtors in possession, Flagstaff Foodservice Corporation and its related companies (Flagstaff), may be subordi *11 nated to certain administrative expenses. In an earlier opinion, 739 F.2d 73 (2d Cir.1984) (referred to hereafter as Flagstaff I), we reversed an order authorizing funds subject to GECC’s lien to be used in payment of interim fees and disbursements of the attorneys for the debtors in possession and the Committee of Unsecured Creditors. The issue now before us is whether the district court erred in affirming the bankruptcy court’s order that payment of outstanding payroll taxes incurred during Flagstaff’s attempted reorganization be made either from those same funds or directly by GECC. Because we conclude that the district court did err, we again reverse.
Many of the pertinent facts were discussed in our prior opinion. See 739 F.2d at 74-75. As stated in that opinion, a financing order which was issued shortly after Flagstaff filed its chapter 11 petition authorized Flagstaff to borrow additional funds from GECC pursuant to a security agreement annexed to the order. GECC was given a security interest that would cover all present and future property of the estate and would have priority over all existing and future debts of Flagstaff and “all administrative expenses of the kind specified in Sections 503(b) or 507(b) of the Bankruptcy Code.” The order further provided that neither Flagstaff nor its successors could apply again for permission to use any property subject to GECC’s lien.
Despite this last provision, representatives of Flagstaff informed GECC on September 17, 1981 that Flagstaff would require additional cash to pay various operating expenses, including payroll taxes. Relying upon Flagstaff’s cash needs projections, GECC agreed to make certain “over-advances” in addition to the amounts authorized in the original financing order. This “overadvance” agreement was incorporated in an order of the bankruptcy court dated October 29, 1981.
At some time, the exact date being disputed, it became obvious that the reorganization attempt was doomed. In the meantime, however, Flagstaff continued to operate its businesses and incurred an obligation for payroll taxes totalling $290,000 for the last quarter of 1981 and the first quarter of 1982. Apparently, these taxes were not paid because Flagstaff’s management mistook the payroll figures in its cash needs projections for those periods to be gross amounts when, in fact, they were net figures. As a result, the amount which GECC agreed to advance was not sufficient to pay the taxes. In September of 1982, Flagstaff’s attorneys informed GECC for the first time of the unpaid taxes and asked it to advance additional funds to satisfy the liability. GECC refused.
By this time, all of Flagstaff’s pre-petition obligations to GECC, which at the time the petition was filed amounted to approximately $22 million and were secured by collateral worth about $42 million, had been repaid. However, pursuant to the financing arrangements described above, Flagstaff had borrowed another $9 million. By late 1982, “the indebtedness had been reduced to $4 million, but this balance was substantially under-collateralized.” 739 F.2d at 76.
In November, 1982, several officers of the debtor, alleging that they might be held personally liable for the unpaid payroll taxes, asked the bankruptcy court to compel GECC to pay the taxes or to allow them to use Flagstaff’s encumbered assets to do so. The court refused GECC’s request to hold an evidentiary hearing, finding that, while some of the facts were disputed, none of the disputed facts was determinative. In a decision dated April 12, 1983, 29 B.R. 215, the court rejected GECC’s argument that the officers lacked standing. It then analyzed the claim under section 506(c) of the Bankruptcy Code, which allows a trustee to “recover from property securing an allowed secured claim the reasonable, necessary costs and expenses of preserving, or disposing of, such property to the extent of any benefit to the holder of such claim.” Finding that GECC had benefited from the chapter 11 proceedings or, in the alternative, that it had consented to the payment of all reasonable and necessary expenses of *12 the liquidation, the bankruptcy court granted the relief sought. On April 2, 1984 the district court affirmed.
GECC’s first argument for reversal is that the officers lacked standing to bring the motion, because, GECC says, section 506(c) may be invoked only by a trustee or debtor in possession. See, e.g., Gravel, Shea & Wright v. New England Carpet Co., 38 B.R. 703, 704 (D.Vt.1983), aff'd per curiam, 744 F.2d 16 (2d Cir.1984); In re Codesco, Inc., 18 B.R. 225, 230 (Bkrtey.S.D.N.Y.1982). Since Flagstaff, the debtor in possession, joined in the officers’ motion, 29 B.R. at 216, and since reversal is required on other grounds, we need not address this issue.
In concluding that GECC benefited directly from Flagstaff’s attempted reorganization and subsequent liquidation, the bankruptcy court found that GECC “received an actual return of millions of dollars.” 29 B.R. at 219. It also found that GECC’s conduct in allowing the chapter 11 liquidation to proceed and in withdrawing its motion to convert the case to a chapter 7 proceeding demonstrated that GECC found the chapter 11 proceeding beneficial to it. The district court agreed with these findings and added that GECC was collaterally estopped from contesting the court’s earlier determination that GECC was the sole beneficiary of the chapter 11 proceedings.
In Flagstaff I, however, we rejected this view. We held there that any benefits accruing to GECC from the attempted reorganization were incidental to the reorganization efforts and beyond the scope of section 506(e). 739 F.2d at 76. We also said that
it requires rather strained logic to conclude that GECC actually benefited from appellees’ services. At the outset of the Chapter 11 proceedings, GECC’s $22 million claim against Flagstaff was secured by $42 million in collateral. When the chapter 11 proceedings aborted, the indebtedness had been reduced to $4 million, but this balance was substantially under-collateralized. Id.
Appellees contend that the value ascribed to GECC’s collateral as of the commencement of the chapter 11 proceedings was based on a going concern valuation of the assets and that Flagstaff’s reorganization attempt helped preserve most of this value. Assuming for the argument that this is so, it does not suffice to warrant section 506(c) recovery. The debtor in possession also must show that its funds were expended primarily for the benefit of the creditor and that the creditor directly benefited from the expenditure. Brookfield Production Credit Ass’n v. Borron, 738 F.2d 951, 952 (8th Cir.1984) (quoting the district court’s opinion, 36 B.R. 445, 448 (E.D.Mo.1983)). A debtor does not meet this burden of proof by suggesting possible or hypothetical benefits. Brookfield Production Credit Ass’n v. Borron, supra, 36 B.R. at 449. Proof of direct benefits sought and received by GECC is completely lacking in this case. Indeed, appellees never requested an evidentiary hearing for the purpose of tendering such proof.
There is no merit in appellees’ contention that GECC impliedly consented to the payment of the disputed payroll taxes when it agreed to make “overadvances” intended to be used in part to pay a limited amount of projected taxes. A secured creditor’s consent to the payment of designated expenses limited in amount will not be read as a blanket consent to being charged with additional administrative expenses not included in the consent agreement. See In re West Post Road Properties Corp., 44 B.R. 244, 247-48 (Bkrtey.S.D.N.Y.1984); In re Roamer Linen Supply, Inc., 30 B.R. 932, 936 (Bkrtcy.S.D.N.Y.1983). Implied consent, as distinguished from actual consent, generally is limited to cases where the creditor has in some way caused the additional expense. See Matter of Trim-X, Inc., 695 F.2d 296, 301 (7th Cir.1982); In re Afeo Enterprises, Inc., 35 B.R. 512, 517 (Bkrtey.D.Utah 1983). Neither actual nor implied consent to the payment of unanticipated payroll taxes has been shown to exist in the instant case.
*13 Finally, we reiterate the concern expressed in Flagstaff I that rulings such as those made by the lower courts in this case would discourage creditors from supporting debtors’ reorganization efforts. 739 F.2d at 77. We are not impressed by appellees’ counterargument that a rule other than that adopted below will discourage experienced management “with the ability to turn an ailing company around or who can get the highest return on a secured creditor’s collateral.” Experienced management would not try to make unauthorized use of a secured creditor’s collateral. Congress certainly could not have intended that such collateral be used simply to protect management from the consequences of its own wrongful or negligent acts.
The order of the district court is reversed. The matter is remanded to that court with instructions to direct the bankruptcy court to disallow payment of the payroll taxes from GECC’s collateral and to vacate its order requiring GECC to pay the taxes.