**In re Marion J. PERRET and Annette Perret, d/b/a Hill Haven Farm, Debtors.**

**Bankruptcy No. 82–10055.**

United States Bankruptcy Court, N.D. New York.

Sept. 3, 1986.

See also 63 B.R. 973.

Usry & Weeks, Metairie, La., for Hibernia Nat. Bank; John F. Weeks, II, of counsel.

Carter, Ledyard & Milburn, New York City, for trustee; James W. Rayhill and Marta S. Lively, of counsel.

Stroock & Stroock & Lavan, New York City, for Unsecured Creditors' Committee; Andrew DeNatale, of counsel.

## DECISION ON MOTION TO COMPEL TRUSTEE TO DISTRIBUTE PROCEEDS OF SALE OF METAIRIE RESIDENCE

HOWARD SCHWARTZBERG, Bankruptcy Judge, by designation.

The trustee in bankruptcy and counsel for the erstwhile unsecured creditors' committee in this confirmed liquidating Chapter 11 case seek to subject Hibernia National Bank In New Orleans ("Hibernia"), a judgment creditor holding a perfected secured claim against certain real property in this estate, with a *pro rata* share of the expenses of administering this entire estate. A substantial portion of these expenses consist of attorneys' fees previously claimed and those that might be claimed hereinafter by the attorneys for the Chapter 11 trustee and the attorneys for the unsecured creditors' committee. Those seeking to subject Hibernia to general administrative expenses premise their position on the fact that Hibernia joined in the application to the court for the appointment of a Chapter 11 trustee and consented to the trustee's plan of liquidation which provided for the sale of all of the property in this estate, including Louisiana real estate encumbered by Hibernia's judgment lien.

Hibernia opposes any liability for administrative expenses beyond those incurred specifically in connection with the sale of two Louisiana parcels of real estate encumbered by its lien. Hibernia maintains that its consent to the confirmed liquidating Chapter 11 plan proposed by the Chapter 11 trustee and the creditors' committee which provided for the reduction of its secured claim to a minimum of $440,000 in

cash "As and When Funds are Received by the Trustee", neither amounted to a waiver of its lien nor a consent to the payment of a *pro rata* portion of the general administrative expenses incurred by this estate.

The conflict between the parties was put into focus as a result of Hibernia's motion for an order directing the Chapter 11 trustee to pay to Hibernia the sum of $96,-374.43, which represents the funds held by the trustee after satisfaction of the first mortgagee's secured claim following the trustee's sale of the debtors' residence in Metairie, Louisiana. The trustee contends that all of the funds now held by him from this estate, amounting to approximately $246,369.44, should be used to pay the remaining administrative expenses and priority claims, which he estimates will exceed the cash on hand.

### FACTS

On January 8, 1982, the debtors, Marion J. Perret and his wife, Annette F. Perret, filed with the United States Bankruptcy Court for the Northern District of New York their voluntary petition for relief pursuant to Chapter 11 of the Bankruptcy Code. Initially, the debtors were continued in possession of the property of the estate and operated their business pursuant to 11 U.S.C. §§ 1107 and 1108. The debtors were mainly engaged in the business of breeding, raising, racing and selling thoroughbred race horses. They operated a thoroughbred horse farm consisting of approximately 270 acres located in Columbia County, New York known as "Hill Haven Farm." On this farm were approximately 20 horses, which were also owned by the debtors. The debtors resided in Metairie, Louisiana, where they owned real estate and a home. They also owned a parcel of vacant land in Lacombe Harbor, Louisiana.

As a result of the deterioration in the assets of the estate caused by the continued operating losses and accrued unpaid expenses generated by the debtors-in-possession, the unsecured creditors' committee moved for the appointment of a trustee pursuant to 11 U.S.C. § 1104(a)(1) and (2).

By an order dated February 25, 1983, the court granted the committee's motion. Pursuant to an order dated March 7, 1983, modifying and supplementing the order of February 25, 1983, J. Reiley McDonald was appointed Chapter 11 trustee and was authorized to operate the debtors' business in accordance with 11 U.S.C. § 1108.

The Chapter 11 trustee concluded shortly after his appointment that an acceptable Chapter 11 plan could not be proposed on the basis of the future earnings of the debtors' business. The trustee found that there was no cash in the estate to satisfy current expenses and concluded that the debtors' business could not operate on a profitable basis. Therefore, the Chapter 11 trustee determined that the alternative was to sell all of the property of the estate, including the horses, and to distribute the proceeds of sale among the creditors.

Hibernia filed a proof of claim in this case in the amount of $520,775.45, which consisted of an unpaid judgment debt owed to it by the debtors in the sum of $315,000, together with interest, stipulated attorneys' fees and court costs. As security for its claim, Hibernia holds perfected judgment liens which were recorded against Hill Haven Farm in Columbia County, New York, the debtors' residence in Metairie, Lousiana and the debtors' vacant lot in Lacombe Harbor, Louisiana. Hibernia's secured judicial lien claim on the debtors' Metairie residence was junior only to the secured claim of the first mortgagee, First Financial Bank, F.S.B. in the principal amount of $250,000, exclusive of interest and costs.

After meeting with the creditors and the debtors the Chapter 11 trustee filed with the court on October 4, 1983 a plan of liquidation which proposed to sell substantially all of the debtors' assets. The proposed plan was amended several times, the last being December 30, 1983. Following the court's approval of a disclosure statement, the proposed plan was appropriately accepted by the requisite majority of creditors as required under 11 U.S.C. § 1126(c) and was ultimately confirmed pursuant to

an order of the court dated March 7, 1984. The debtors' appeal of the order of confirmation was dismissed by the United States District Court for the Northern District of New York by order dated April 30, 1984.

Pursuant to the confirmed plan of liquidation, the Chapter 11 trustee sold the debtors' residence in Metairie, Louisiana, for the cash price of $475,000. The full balance of the principal and interest owed by the debtors on the first mortgage held by the First National Bank, F.S.B., together with settlement costs, was paid to it by the Chapter 11 trustee, leaving a balance in the estate of $96,374.43, which Hibernia now claims.

CONFIRMED PLAN OF LIQUIDATION

The confirmed plan provides that the Chapter 11 trustee was to liquidate assets of the estate sufficient to pay administrative expenses, priority claims and Class 1 through Class 7 claims, to the extent funds were available. Hibernia was placed in Class 3, which was addressed in Article 5.03 of the plan, which provides:

Hibernia shall receive As and When Funds are Received by the Trustee, but in no event prior to confirmation, a minimum of $440,000.00, in cash without interest. Hibernia will also be entitled to receive 40% of (a) the Excess Proceeds Received for the Horses, and (b) the proceeds of sale of the lot in Lacombe Harbor, Louisiana. *Provided, however,* that in no event will Hibernia be entitled to receive an amount on account of subsections (a) and (b) which exceeds $60,000.00 in the aggregate. Hibernia will also be entitled to receive 28.6% of any Other Assets. *Provided, however,* that in no event will Hibernia be entitled to receive more than the amount of its Claim.

ADMINISTRATIVE EXPENSES AND PRIORITY CLAIMS

Article 2.01 of the confirmed plan deals with administrative and priority claims as follows:

The Administrative Expenses of the Debtors' Chapter 11 case allowed pursuant to Section 503(b) of the Code and each Priority Claim, to the extent allowed by the Bankruptcy Court, shall be paid in full, in cash on or about the Effective Date of the Plan, to the extent funds are available therefor, except as provided in Section 2.02, *provided, however,* that the Trustee may pay Administrative Expenses which accrue in the ordinary course of business prior to the Effective Date.

PROFESSIONAL FEES

Article 2.02 of the confirmed plan states that professional fees, costs and disbursements will be determined by the court and are expected to be incurred even after the date of confirmation because of the trustee's continued involvement in the affairs of the estate after confirmation. Notice is given in paragraph 2.02 of the confirmed plan that professional fees will be paid prior to any other payments required to be made pursuant to the plan. The language reflects that such professional fees may reduce the amounts to be paid to creditors. However, this language is susceptible to the interpretation that unsecured claims may be reduced by allowed professional fees but that allowed secured claims would remain unaffected by such fees. This interpretation is supported by the language in Article 5.07 of the plan that all liens shall transfer to the proceeds from the sale of secured property.

The provision in Article 2.02 of the plan with respect to professional fees states in relevant part as follows:

While the Trustee does not anticipate these fees being substantial, creditors should be aware that under the terms of the Code these professional fees, to the extent allowed by the Bankruptcy Court, will be paid prior to any other payments required to be made pursuant to the Plan. In the event that there are insufficient funds to make all of the payments required to be made under the Plan in full, post-confirmation professional fees will therefore reduce the amounts which the creditors of the Debtors will receive.

## SALE OF THE DEBTORS' RESIDENCE

In order to implement the execution of the liquidation concept expressed in the confirmed plan, provision is made in the penultimate paragraph in Article 6.01 for the sale of the debtors' residence in Metairie, Louisiana, by the Chapter 11 trustee in the exercise of his sole discretion, with the proceeds of sale to be distributed in full to the first mortgagee, First National Bank, F.S.B., before any funds are paid to the other creditors. This point is expressed in Article 6.01 as follows:

> If the Trustee elects to sell the Debtors' residence in Louisiana, First Financial will be paid the full amount of its Allowed Claim. All remaining proceeds will be distributed *pro rata to all of the creditors* until they have received the amounts specified in Article V.

(Emphasis added).

## NO MINIMUM GUARANTEE

The creditors who were to receive distributions under the confirmed plan "As and When Funds are Received" were not guaranteed that they would receive the full minimum payments called for under the plan, but were dependent upon sufficient funds being generated from the liquidation sales to satisfy the specified minimum amounts and that it was conceivable that the creditors might be paid less than such amounts. The possibility of a shortfall was expressed in the definition of "As and When Funds are Received" in Article 1.03 of the confirmed plan as follows:

> *As and When Funds Are Received* means, with respect to a payment required to be made pursuant to the Plan, that the payment may be paid in full at one time, to the extent funds are available therefor, or may be paid in installments over time from the proceeds realized by the Trustee from the sale of Property of the Estate, *provided, however* that all final payments required to be made pursuant to the Plan shall be made, to the extent funds are available therefor, on or about the Consummation Date of the Plan. In the event that there

is a shortfall in the funds necessary to make all the payments required to be made pursuant to the Plan, creditors with Claims which are to be paid As and When Funds are Received will receive *less* than the amounts specified under the Plan to the extent that such creditors have not previously been paid in full.

## DISCUSSION

When the Chapter 11 trustee and the participating creditors in this voluntary Chapter 11 case originally structured the liquidating plan of reorganization it was anticipated that an efficient liquidation of the debtors' Hill Haven horse farm and thoroughbred horses in New York would produce sufficient funds to satisfy the holders of secured claims who had agreed to accept reduced amounts and that there would be additional funds available to distribute a portion of the balance to the unsecured creditors after having first paid the administrative expenses and priority claims Indeed, it was contemplated that if the liquidation produced sufficient funds to satisfy all of the allowable reduced claims and administrative expenses, there would be no need for the Chapter 11 trustee to sell the debtors' residence and vacant lots located in Louisiana. However, in the event that it was necessary to sell the debtors' Louisiana real estate in order to accomplish the purposes of the confirmed plan, the Chapter 11 trustee was given sole discretion to liquidate these properties as well, which he eventually did.

Owing to unforeseen circumstances, including marketing conditions, delays and other difficulties, it became apparent that the liquidation plan would not produce satisfactory results. A shortfall arose so that there are now insufficient funds to pay the allowed unsecured claims. The administrative expenses, which must be paid before any distributions to unsecured creditors, have mounted substantially during the administration of this estate. In fact, the professional fees incurred in this estate have risen to the point where there is now a clash between the proponents for the

priority of administrative expense payments and Hibernia National Bank, the holder of an allowed secured claim, arising under a perfected judgment lien against the debtors' horse farm in New York and their real estate in Louisiana.

Hibernia agreed to accept under the confirmed plan a minimum reduced payment of $440,000 rather than its allowed claim of $520,775.45. Hibernia has already received $285,756.47 from the proceeds of the sale of the debtors' Hill Haven horse farm in New York. Hibernia now seeks to receive the $96,374.43 balance held by the Chapter 11 trustee which resulted after the Chapter 11 trustee sold the debtors' Metairie, Louisiana residence and full paid the first mortgagee, First National Bank, F.S.B., in satisfaction of its secured claim, which was senior to Hibernia's secured second lien. The Chapter 11 trustee and the creditors' committee maintain that Hibernia accepted the confirmed plan and agreed that the funds realized upon the sale of the Metairie residence were to be applied first to the payment in full of the first mortgagee and then "pro rata to all of the creditors" on an unsecured basis as and when funds are received. Accordingly, since administrative expenses and priority claims are to be paid before the unsecured creditors, they reason that Hibernia, having allegedly waived its secured claim as to these funds, may not receive any payment from the Metairie proceeds before all of the administrative expenses and priority claims are paid in full.

## PAYMENT PRO RATA TO ALL OF THE CREDITORS

■ Hibernia contends that it did not consent to the waiver of its secured claim against the Metairie residence when it consented to the confirmed plan which provides in the penultimate paragraph in Article 6.01 that following the full payment of the first mortgagee's lien, the "remaining proceeds will be distributed pro rata to all of the creditors until they have received the amounts specified in Article V." Hibernia maintains that this provision simply means that all creditors, secured and unsecured, will share in the balance on hand as and when there are funds, in accordance with the interest of each claim. Thus, secured claims would be satisfied in full in accordance with their priorities and then unsecured claims would share in any balance based upon the amounts of their claims. While the reference to "all other creditors" might suggest that the balance on hand after payment to the first mortgagee means that secured claims are to share on an equal basis with unsecured claims, such a construction is rebutted by the phrase *"pro rata"*, which has been defined to mean:

> Proportionately; according to a certain rate, percentage or proportion. *According to measure, interest, or liability.*

(Emphasis added). Black's Law Dictionary (5th ed. 1979). A distribution according to the "interest or liability" of all creditors would require a payment to the creditors in a descending order of their priorities, with secured claims being paid before unsecured claims. In the instant case, the position of those who contend that Hibernia waived its secured claim against the balance of the proceeds from the sale of the debtors' Metairie residence is undermined by express language in Article 5.07 which recognized the continued efficacy of secured claims and provides that their liens would attach to the proceeds of sales. This provision in Article 5.07 reads as follows:

> *All secured creditors shall retain their liens* until final payment has been made with respect to such Claims. In the event that the property securing such Claims is sold, the lien shall transfer to the proceeds.

(Emphasis added). Manifestly, the concept that liens will attach to the proceeds from sales is totally inconsistent with the argument that the suggested ambiguity in the phrase "pro rata to all of the creditors" signifies an implied waiver of secured liens. Hence, no implied waiver can be found in the face of express language to the contrary.

The Chapter 11 trustee and the creditors' committee also contend that a partial waiver of secured claims can be spelled out from the overall provisions in the confirmed plan. They suggest that secured claims are recognized in the plan only to the extent that specified payments are allocated to named secured claim holders with respect to specific properties and that all other creditors' claims are to be treated as unsecured. Thus, certain creditors are to receive specific payments with respect to the sale of Hill Haven Farm, other secured claim holders are named to receive payments from the sale of the horses and other named secured claims are to be paid ascertained amounts from the sale of the Louisiana real estate. Accordingly, after attributing certain properties to named secured claim holders, it is argued that the remaining funds will be shared by all the creditors on an unsecured basis, especially in light of the shortfall of funds needed for distribution under the plan. The references in the plan to specific properties to be sold to satisfy named secured claim holders does not imply that the omission of an express reference to other secured claim holders in connection with a certain property means that such other secured claim holders have agreed to waive their liens against the proceeds from the sale of such property. Such a waiver by implication is expressly rejected by the terms of the confirmed plan. After outlining the treatment of all claims that are impaired under the plan, Article V concludes with a clear statement in paragraph 5.07, which is completely inconsistent with any theory of implied waiver, that "All secured creditors shall retain their liens until final payment" and that in the event the secured property is sold "the lien shall transfer to the proceeds." Manifestly, by consenting to the trustee's plan of liquidation, Hibernia did not waive its secured claim against the proceeds from the sale of the debtors' Metairie residence. Hibernia simply consented to reduce its secured claim to a minimum of $440,000 in accordance with the distribution scheme set forth in the confirmed plan.

## ADMINISTRATIVE EXPENSES OF SALE OF RESIDENCE

█ Having found that Hibernia did not waive its secured claim against the proceeds from the sale of the debtors' residence in Metairie, Louisiana, there next remains for consideration the extent, if any of Hibernia's responsibility for the costs of such sale. The governing rule is set forth in 11 U.S.C. § 506(c).

> (c) The trustee may recover from property securing an allowed secured claim the reasonable, necessary costs and expenses of preserving, or disposing of, such property to the extent of any benefit to the holder of such claim.

The key phrase is "to the extent of any benefit to the holder of such claim." General administrative expenses of a reorganization, as distinguished from the reasonable and necessary costs of sale, are not usually regarded as a charge against a secured claim holder whose property was sold in the process of reorganization:

> Such benefits as might be said to have accrued ... from the attempt to reorganize were incidental to the reorganization efforts and did not fall within the intended scope of section 506(c). *See Matter of Trim-X, supra,* 695 F.2d [296] at 301 [ (7th Cir.1982) ]; *In re Codesco, Inc.,* 18 B.R. 225, 228–30 (Bkrtcy.S.D.N.Y.1982).

*General Electric Credit Corporation v. Levin & Weintraub, Esqs., (In re Flagstaff Foodservice Corporation* ), 739 F.2d 73 at 76 (2d Cir.1984).

█ It was argued that Hibernia consented to the distribution scheme contemplated by the confirmed plan, permitted the property covered by its secured claim to be liquidated and should, therefore, bear a proportionate share of the administrative expenses. This position has merit only to the extent that Hibernia's consent to the trustee's liquidation of Hibernia's secured interests amounts to a consent to reimburse the trustee for the costs and expenses directly associated with such sale.

A secured creditor's consent to the payment of designated expenses limited in amount will not be read as a blanket consent to being charged with additional administrative expenses not included in the consent agreement. *See In re West Post Road Properties Corp.*, 44 B.R. 244, 247–48 (Bkrtcy.S.D.N.Y.1984); *In re Roamer Linen Supply, Inc.*, 30 B.R. 932, 936 (Bkrtcy.S.D.N.Y.1983). Implied consent, as distinguished from actual consent, generally is limited in cases where the creditor has in some way caused the additional expense. *See Matter of Trim-X, Inc.*, 695 F.2d 296, 301 (7th Cir.1982); *In re Afco Enterprises, Inc*, 35 B.R. 512, 517 (Bkrtcy.D.Utah 1983).

*General Electric Credit Corporation v. Peltz (In re Flagstaff Foodservice Corporation )* 762 F.2d 10 at 12 (2d Cir.1985).

The reasonable and necessary costs of liquidating the Metairie property covered by Hibernia's lien, which Hibernia would have incurred in recovering and selling the property had it foreclosed upon its lien, should be borne by Hibernia to the extent of any benefit to it. Therefore, an evidentiary hearing will be held in order to allow the trustee an opportunity to establish and properly identify which expenses for the preservation or disposition of the Metairie residence were incurred primarily for Hibernia's benefit.

## CONCLUSIONS OF LAW

1. Pursuant to an Administrative Order, dated June 16, 1986, the Judicial Council of the Second Circuit approved the temporary assignment of this Bankruptcy Judge in the Southern District of New York "to the Bankruptcy Court of the Northern District of New York to preside over the matter of Marion Perret and Annette Perret, d/b/a Hill Haven Farm, 82–10055."

2. This court has jurisdiction of the subject matter and the parties pursuant to 28 U.S.C. § 1334 and 28 U.S.C. § 157(a). This is a core proceeding under 28 U.S.C. § 157(b)(2)(A) and (K).

3. Hibernia National Bank in New Orleans did not waive its secured claim against the proceeds from the Chapter 11 trustee's sale of the debtors' residence in Metairie, Louisiana when it consented to the confirmed plan of liquidation because the distribution scheme provided for under the confirmed plan explicitly provides that all secured creditors shall retain their liens, and in the event of the sale of encumbered property, such liens shall transfer to the proceeds.

4. The proceeds from the trustee's sale of the Metairie residence, which must be distributed *pro rata* to all of the creditors after payment to the first mortgagee, must first be paid to satisfy secured interests in their order of descending priorities before any such funds may be made available to unsecured creditors in proportion to their claims, or to administrative expenses which have priority over unsecured creditors.

5. Pursuant to 11 U.S.C. § 506(c), Hibernia's secured claim is subject to the reasonable and necessary costs of preserving and disposing of the Metairie residence to the extent that the trustee can prove which of such expenses were incurred primarily for Hibernia's benefit.

6. Hibernia's motion to recover the balance of the proceeds from the trustee's sale of the Metairie residence is granted to the extent that Hibernia may recover the balance of the proceeds from the Metairie sale remaining after a determination of the first mortgagee's pending motion for attorneys' fees allegedly due under the first mortgage and after a determination as to the extent of any charge to Hibernia for the expenses of the Metairie residence sale which were incurred primarily for Hibernia's benefit.

SETTLE ORDER on notice in accordance with the foregoing.